# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

FILED

Civil Action No.

U.S. DISTRICT COURT

|  |  |
|---|---|
| **CARTER-McLEOD PAPER AND PACKAGING, INC.** | ) |
|  | ) |
| **Plaintiff** | ) |
|  | ) |
| **v.** | ) |
|  | ) |
| **DONALD McLEOD; McLEOD PACKAGING SYSTEMS, INC.; and MORTEN HAZZARD** | ) |
|  | ) |
| **Defendants** | ) |

**COMPLAINT**
**(Jury Trial Demand)**

05-30087-MAP

FILING FEE PAID:
RECEIPT # 305193
AMOUNT $ 250.00
BY DPTY CLK mch
DATE 4/14/05

## INTRODUCTION

1.    The plaintiff, Carter-McLeod Paper and Packaging, Inc. ("Plaintiff" or "Carter-McLeod Packaging"), brings this action against the defendants, Donald McLeod, Morten Hazzard ("Hazzard") and McLeod Packaging Systems, Inc. ("McLeod Packaging") (or collectively "Defendants") based on, among other unlawful conduct, direct and contributory trademark infringement under the Lanham Act § 43(a), as set forth in 15 U.S.C. § 1051 et seq. and related claims under Mass. G.L. ch. 110B, § 12. The Plaintiff further seeks recovery from the Defendants based on their unlawful removal, withdrawal, transfer and conversion of cash, assets, confidential and proprietary files, records and information and other property from Carter-McLeod Packaging, as well as their improper solicitation of Carter-McLeod Packaging's employees and customers, publishing of false and disparaging statements about the Plaintiff, and intentionally interfering with the Plaintiff's contractual and advantageous business relations through improper and illegal means and methods. Donald McLeod engaged in such conduct, as well as unlawfully taking and converting well over $100,000.00 in funds from the Plaintiff, while he served as an officer, director and shareholder of the Plaintiff, with the fiduciary

290803_2

obligations attendant to such capacities. Donald McLeod, also while acting in his fiduciary capacity for Carter-McLeod Packaging, formed and became the sole shareholder and exclusive officer of McLeod Packaging, a similarly named company, which competes with the Plaintiff and which participated in and benefited from the individual illegal conduct of Donald McLeod and Hazzard. Hazzard's unlawful conduct included removing and converting confidential and proprietary files, records and information and other property, improperly soliciting employees and customers, publishing false and disparaging statements, and intentionally interfering with the Plaintiff's contractual and advantageous business relations through improper and illegal means and methods before and/or after leaving his employment with the Plaintiff to work for McLeod Packaging.

2.    The Plaintiff seeks damages from the Defendants equal to the value of cash, assets and property taken and converted by the Defendants from the Plaintiff, as well as for lost profits, business and goodwill caused by the unlawful conduct of the Defendants. The Plaintiff also seeks up to three, but not less than two, times the amount of any damage award in accordance with Mass. G.L. ch. 93A, along with its attorneys' fees, interest and litigation costs. The Plaintiff further seeks injunctive relief precluding the Defendants from engaging in further illegal conduct or otherwise interfering with or seeking to damage Carter-McLeod Packaging's business.

## JURISDICTION AND VENUE

3.    This Court has original jurisdiction over Plaintiff's Lanham Act claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. Plaintiff's state law claims arise out of the transactions and occurrences that are the subject matter of Plaintiff's Lanham Act claims. This Court therefore has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).

4.    All defendants reside in this district, and a substantial part of the events and omissions giving rise to the claims in this matter occurred in this district.  Venue in this Court is therefore appropriate pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5.    Plaintiff Carter-McLeod Packaging is a Massachusetts corporation with a principal place of business at 136 Wayside Avenue, West Springfield, Massachusetts.

6.    Defendant Donald McLeod is an individual with a residential address at 16 East Hill Road, Brimfield, Massachusetts.

7.    Defendant McLeod Packaging is a Massachusetts corporation with a principal place of business at 16 East Hill Road, Brimfield, Massachusetts.

8.    Defendant Hazzard is an individual with a residential address at 11B Catherine Drive, Belchertown Massachusetts.

## BACKGROUND

9.    Carter-McLeod Packaging is a closely held corporation, which was formed on or around October 11, 2001.

10.    Carter-McLeod Packaging's stated purpose in its Articles of Incorporation is "[t]o engage in the distribution and sale of industrial paper products and package films and supplies; the distribution, sale, servicing and supplying of parts for packaging equipment, and to carry on any business incidental or related thereto."

11.    A predecessor-in-interest of Carter-McLeod Packaging, McLeod Packaging Systems, LLC, adopted and used in interstate commerce the mark "McLeod Packaging Systems" at least as early as 1998 in association with the distribution, sale, servicing and supplying of parts for packaging equipment.

290803_2

12.    In 2001, McLeod Packaging Systems, LLC purchased an entity known as "Carter Paper."

13.    McLeod Packaging Systems, LLC formed the entity now known as Carter-McLeod Paper & Packaging, Inc., which continues the business of McLeod Packaging Systems, LLC and is still known to consumers by the mark "McLeod Packaging Systems."

14.    McLeod Packaging Systems, LLC used a logo consisting of a rectangular box containing the letters "MPS" in a diagonal orientation (the "Logo").

15.    Carter-McLeod Packaging also adopted the marks "Carter-McLeod" and "Carter-McLeod Paper & Packaging" for use in association with the sale of paper products, films and supplies and the sale, servicing and supplying of parts for packaging equipment since at least as early as its inception in October 2001.

16.    Carter-McLeod Packaging has used the marks "Carter-McLeod" and "Carter-McLeod Paper & Packaging" continuously in interstate commerce since at least as early as October 2001.

17.    Carter-McLeod Packaging uses a logo consisting of a rectangular box containing the overlapping letters "CM" in a diagonal orientation.

18.    Through Carter-McLeod Packaging's continuous use of the marks referenced in the preceding paragraphs, its substantial outlay of advertising expenditures and substantial sales, the marks "McLeod Packaging Systems," "Carter-McLeod," "Carter-McLeod Paper & Packaging," and the Logo have become distinctive and signify the Plaintiff's high quality goods and services in the minds of purchasers and prospective purchasers of its goods and services.

19.    On October 12, 2001, Carter-McLeod Packaging issued common no par value shares of stock ("common stock") to four individuals as follows:  (a) forty shares to Donald

290803_2

4

McLeod; (b) forty shares to Robert McLeod; (c) fifteen shares to Alan Chadwick; and (d) five shares to Thomas Dingman.

20.     On January 1, 2003, Carter-McLeod Packaging issued another 4.44 common no par value shares to James Pollard, III.

21.     During the relevant times, Carter-McLeod Packaging did not issue common stock to anyone other than the persons referenced in the preceding paragraphs.

22.     Donald McLeod was appointed President of Carter-McLeod Packaging on or around October 12, 2001 and remained president of the company until December 15, 2004.

23.     Donald McLeod's duties as President of Carter-McLeod Packaging included, among other things, overseeing the financial operation of the company, supervising accounting and bookkeeping staff, and providing information to and working with the company's outside accountant.

24.     In or around March 2003, Donald McLeod also assumed responsibilities as Carter-McLeod Packaging's Chief Operating Officer.

25.     Donald McLeod's duties as Chief Operating Officer included, among other things, overseeing Carter-McLeod Packaging's day-to-day operations, supervising the company's accounting and bookkeeping staff, and providing information to and working with the company's outside accountant.

26.     Donald McLeod also was a member of Carter-McLeod Packaging's Board of Directors from October 11, 2001 until January 14, 2005 and by virtue of that position owed the company a fiduciary duty and a duty of loyalty.

27.    Between April 15, 2002 and October 22, 2004, Donald McLeod issued and/or caused to be issued checks payable to himself from Carter-McLeod Packaging totaling $37,223.92.

28.    The checks referenced in the preceding paragraph were issued without the knowledge of Carter-McLeod Packaging's other officers, directors or shareholders and were not in payment of amounts owed or otherwise due and payable to Donald McLeod.

29.    On May 22, 2002, Donald McLeod directed Carter-McLeod Packaging's bookkeeper to wire $5,000.00 to Donald McLeod's personal bank account.

30.    The $5,000.00 wire transfer referenced in the preceding paragraph was made without the knowledge of other officers, directors or shareholders of Carter-McLeod Packaging and was not in payment of amounts owed or otherwise due and payable to Donald McLeod.

31.    Donald McLeod intentionally and fraudulently concealed the checks and the wire transfer referenced in the preceding paragraphs from the other officers, directors and shareholders of the company by making or causing to be made fraudulent entries in Carter-McLeod Packaging's financial books and records.

32.    During his tenure as an officer, director and shareholder of Carter-McLeod Packaging, Donald McLeod charged and purchased items on Carter-McLeod Packaging's credit cards and accounts for his own use and benefit without reimbursing Carter-McLeod Packaging for such charges and purchases.

33.    Donald McLeod made the charges and purchases referenced in the preceding paragraph without authorization and without the knowledge of the other officers, directors and shareholders of Carter-McLeod Packaging.

290803_2

6

34.    Among the purchases Donald McLeod made with Carter-McLeod Packaging's funds was his purchase, on or around July 18, 2003, of a John Deere lawn tractor from Home Depot on Carter-McLeod Packaging's corporate credit card.

35.    Donald McLeod deliberately concealed the purchase of the John Deere lawn tractor from the other officers, directors and shareholders of Carter-McLeod Packaging and retained possession of it for his own personal use and benefit.

36.    Donald McLeod did not deliver the John Deere lawn tractor to Carter-McLeod Packaging until around December 2004, after Carter-McLeod Packaging's other officers, directors and shareholders had learned of the July 18, 2003 purchase.

37.    Between July 18, 2003 and December 2004, Donald McLeod retained personal possession and control of the John Deere lawn tractor and used it for his own personal benefit without the knowledge or authorization of the company's other officers, directors and shareholders.

38.    Donald McLeod failed to compensate Carter-McLeod Packaging for his approximately eighteen months of personal and sole use of the John Deere lawn tractor or for the depreciation in value of the tractor for the period during which Carter-McLeod Packaging did not have access or use of the same.

39.    Between May 5, 2002 and November 2, 2003, Donald McLeod authorized 1,309.75 overtime hours (hours worked in excess of forty hours per week) for Nester M. Sostre, Sr., a warehouse employee for Carter McLeod Packaging ("Sostre's Overtime").

40.    Donald McLeod authorized Carter-McLeod Packaging's payment of Mr. Sostre's Overtime compensation at a rate of $18.75 per hour (equal to one and one half of his normal hourly pay), for a total of $24,558.00 in overtime compensation.

290803

41.    Upon information and belief, Mr. Sostre spent some or all of Sostre's Overtime performing personal work for Donald McLeod at his personal residence without the knowledge of other officers, directors and shareholders of Carter-McLeod Packaging.

42.    Sostre's Overtime compensation included 467 hours of work he performed between July 9, 2003 and November 5, 2003 "off the clock" (i.e., not recorded through Carter-McLeod Packaging's regular employee time-recording system).

43.    Carter-McLeod Packaging, by agreement between Donald McLeod and Sostre, paid $8,756.25 to Sostre for Sostre's Overtime work he performed off-the-clock.

44.    Upon information and belief, some or all of the 467 hours of off-the-clock work Mr. Sostre performed was for personal work for Donald McLeod at his personal residence without the authorization or knowledge of the other officers, directors or shareholders of Carter-McLeod Packaging.

45.    Donald McLeod did not reimburse Carter-McLeod Packaging for its payment of Sostre's Overtime work performed at Donald McLeod's residence and for Donald McLeod's own personal benefit.

46.    During his tenure as President and Chief Operating Officer of Carter-McLeod Packaging, Donald McLeod was entitled to payment of commissions equal to fifty percent of the profits realized by Carter-McLeod Packaging on Donald McLeod's sales of products.

47.    During his tenure with Carter-McLeod Packaging, Donald McLeod authorized and paid commissions to himself substantially in excess (hereinafter referred to as "Inflated Commissions") of fifty percent of the profits realized on his sales of Carter-McLeod Packaging's products.

48.    Donald McLeod authorized and paid himself the Inflated Commissions knowing that such commissions were not owed to him and without the knowledge of the other officers, directors and shareholders of Carter-McLeod Packaging.

49.    The Inflated Commissions were calculated and derived by Donald McLeod's manipulation and falsification of profits on various sales to and payments received from customers of Carter-McLeod Packaging.

50.    Commissions taken by Donald McLeod to which he was not entitled included, but upon information and belief were not limited to, the following:

a.    $9,159.62 of excess commissions with respect to sales to three customers, Weetabix, Ken's Foods and Clement Pappas, through Jaffco Company, between July 2003 and February 2004;

b.    $15,965.90 of excess commissions on sales to Praxair Corporation between March 2003 and December 2003;

c.    $8,900.81 of excess commissions on sales to Catania Spagna Company between November 2003 and November 2004;

d.    $2,968.30 of commissions on a mistaken overpayment of $5,936.60 by Praxiar Corporation received on or around June 26, 2004, which Donald McLeod knew was a mistaken payment but which he failed to return to the customer; Carter-McLeod Packaging reimbursed Praxair Corporation for the overpayment after Donald McLeod was terminated, but Donald McLeod kept the commission.

51.    In or around August 2003, Donald McLeod purchased a second-hand Craftsman lawn tractor and weed trimmer for $100.00 and immediately resold the same to Carter-McLeod

290803

9

Packaging for $2,250.00, making a personal profit on the transaction of $2,150.00, without the knowledge of the other officers, directors and shareholders.

52.    On December 15, 2004, Carter-McLeod's Board of Directors, in accordance with the bylaws of Carter-McLeod Packaging, voted to terminate the employment of Donald McLeod, effective immediately, and to appoint Robert McLeod as President.

53.    The Board of Directors also voted on December 15, 2004 to redeem Donald McLeod's common stock, requiring him to turn his stock certificates in to the Secretary of Carter-McLeod Packaging by January 14, 2005, in accordance with the bylaws of Carter-McLeod Packaging.

54.    On or around December 23, 2004, while Donald McLeod was still a director of Carter-McLeod Packaging and a shareholder in redemption, Donald McLeod caused to be formed McLeod Packaging.

55.    Donald McLeod was named President, Treasurer and Secretary of McLeod Packaging and is its sole shareholder.

56.    McLeod Packaging's business purpose according to its Articles of Organization is "[t]o deal in all types and kinds of packaging materials, supplies, and equipment and any business related thereto or useful in connection therewith, and other lawful business."

57.    McLeod Packaging's business purpose is the same as or similar to Carter-McLeod Packaging's business purpose.

58.    McLeod Packaging competes directly with Carter-McLeod Packaging.

59.    McLeod Packaging has used and continues to use the marks "McLeod" and "McLeod Packaging" in association with the sale of paper products, films and supplies and the sale, servicing and supplying of parts for packaging equipment.

290803_2

60.     On information and belief, McLeod Packaging adopted a logo consisting of a rectangular box containing the letters "MPS" in a diagonal orientation that is identical to the Logo.

61.     Upon information and belief, Donald McLeod's selection and use of the name of McLeod Packaging, a name similar to Carter-McLeod Packaging's name, was for the purpose and/or had the effect of confusing Carter-McLeod Packaging's customers and allowing McLeod Packaging to capitalize and benefit from the goodwill of Carter-McLeod Packaging.

62.     Between December 15, 2004 and January 15, 2005, Donald McLeod, while a member of Carter-McLeod's Board of Directors and a shareholder-in-redemption:

    a.     solicited Carter-McLeod Packaging's employees, agents and servants and for his own benefit and the benefit of McLeod Packaging, and to the detriment of Carter-McLeod Packaging and its shareholders

    b.     solicited Carter-McLeod Packaging's existing and potential customers and clients and  otherwise interfered with Carter-McLeod Packaging's contractual and advantageous business relations for his own benefit and the benefit of McLeod Packaging, and to the detriment of Carter-McLeod Packaging and its shareholders;

    d.     removed from the premises of Carter-McLeod Packaging proprietary, confidential and other business records, files and documents for his own wrongful use and the use by McLeod Packaging to the detriment of Carter-McLeod Packaging and its shareholders;

    e.     directly competed with Carter-McLeod Packaging for his own financial benefit and the benefit of McLeod Packaging and to the detriment of Carter-McLeod Packaging and its shareholders;

290803

11

      f.      used proprietary, confidential and other business records, files and information for his own financial benefit, the benefit of McLeod Packaging, and to the detriment of Carter-McLeod Packaging and its shareholders;

      g.      used goodwill developed and paid for by Carter-McLeod Packaging for his own financial and reputational gain, the benefit of McLeod Packaging, and to the financial and reputational detriment of Carter-McLeod Packaging and its shareholders.

      h.      made false and defamatory statements about Carter-McLeod Packaging to customers, financial representatives and others within the relevant business community for the purpose and intent of damaging Carter-McLeod Packaging's business and reputation; the statements included, but were not limited to, statements that Carter-McLeod Packaging was experiencing financial difficulties and could not meet various obligations to customers, vendors and creditors; and

      i.      solicited Carter-McLeod's customers and otherwise wrongfully interfered with Carter-McLeod Packaging's contract and business relations using proprietary, confidential and other business records, files and information and using and relying upon false and defamatory statements against Carter-McLeod Packaging.

63.      On January 3, 2005, Hazzard, a Carter-McLeod Packaging salesperson hired and supervised by Donald McLeod, resigned from his position at Carter-McLeod Packaging to work for McLeod Packaging.

64.      Hazzard, prior to and/or after resigning from his employment with Carter-McLeod Packaging:

      a.      transferred proprietary, confidential and other business records, files and documents from Carter-McLeod Packaging's computer system to his own personal

290803_2

12

computer, including but not limited to customer price lists showing deviations from standard pricing by customer and other confidential and proprietary information;

      b.    removed from the company vendor price lists, catalogs, equipment, computer software and other items and property of Carter-McLeod Packaging;

      c.    made false and defamatory statements about Carter-McLeod Packaging to customers, financial representatives and others within the relevant business community for the purpose and with the intent of damaging Carter-McLeod Packaging's business and reputation; the statements include, but are not limited to, statements that Carter-McLeod Packaging was experiencing financial difficulties and could not meet various obligations to customers, vendors and creditors; and

      d.    solicited Carter-McLeod Packaging's employees and customers and otherwise wrongfully interfered with Carter-McLeod Packaging's contract and advantageous business relations using proprietary, confidential and other business records, files and information and using and relying upon false and defamatory statements against Carter-McLeod Packaging.

65.    On January 14, 2005, Carter-McLeod Packaging, at the direction of its acting president, Robert McLeod, and in accordance with the December 15, 2004 vote of the Board of Directors, effectuated the redemption of Donald McLeod's outstanding shares of common stock by canceling all of his shares.

66.    On January 14, 2005, after Carter-McLeod Packaging redeemed Donald McLeod's shares of common stock, Carter-McLeod Packaging's remaining shareholders, by unanimous consent, removed Donald McLeod from Carter-McLeod Packaging's Board of Directors effective on that same date.

290803

67.    McLeod Packaging knowingly and willingly participated in and/or received and accepted the benefits of the illegal conduct of both Donald McLeod and Hazzard, as set forth in the preceding paragraphs herein.

68.    The conduct of Donald McLeod and Hazzard as set forth in the preceding paragraphs herein resulted in and continues to cause, among other substantial damages, (a) the loss of existing and future contracts, business, customers and profits; (b) adverse action by vendors, including but not limited to the request for early payment and prepayment on shipments and the refusal to ship product to Carter-McLeod Packaging and its customers; (c) the freezing by Carter-McLeod Packaging's former bank of its operating line of credit; (d) the need for Carter-McLeod Packaging to obtain new bank financing; and (e) a significant impairment of Carter-McLeod Packaging's reputation and goodwill.

69.    Carter-McLeod Packaging's investigation of the conduct of Donald McLeod and Hazzard is ongoing and Carter-McLeod Packaging believes that other illegal conduct, conversion and fraudulent conduct occurred, for which Carter-McLeod Packaging is entitled to recovery.

### CLAIMS AGAINST DONALD MCLEOD

### COUNT I
### Direct and Contributory Trademark Infringement
### (Lanham Act § 43(a) (15 U.S.C. § 1125(a)))

70.    Carter-McLeod Packaging adopts herein by reference each of the preceding paragraphs and alleges the same as if originally set forth herein.

71.    Donald McLeod has used and has induced McLeod Packaging to use the marks "McLeod," "McLeod Packaging," "McLeod Packaging Systems" and the Logo in commerce in connection with the sale, offering for sale, repair, distribution, and advertising of paper products,

290803_2

films and supplies and the sale, servicing and supplying of parts for packaging equipment and such use has caused and is likely to continue to cause confusion or mistake or to deceive as to the affiliation, connection or association of McLeod Packaging with Carter-McLeod Packaging or as to the origin, sponsorship, or approval of McLeod Packaging's goods or services by Carter-McLeod Packaging.

72.     The above referenced activities of Donald McLeod have been knowing, intentional and willful.

73.     As a direct and proximate result of Donald McLeod's direct and contributory infringement of the "McLeod Packaging Systems," "Carter-McLeod," "Carter-McLeod Paper & Packaging," and the Logo marks, Carter-McLeod Packaging has suffered and will continue to suffer substantial loss and injury.

## COUNT II
## Unfair Competition
## (Mass. G.L. ch. 110B, § 12)

74.     Carter-McLeod Packaging adopts herein by reference each of the preceding paragraphs and alleges the same as if originally set forth herein.

75.     Donald McLeod has used and caused McLeod Packaging to use and continue to use the marks "McLeod," "McLeod Packaging," "McLeod Packaging Systems" and the Logo without the consent of Carter-McLeod Packaging, the common law owner of the marks "McLeod Packaging Systems," "Carter-McLeod," "Carter-McLeod Paper & Packaging" and the Logo.

76.     Donald McLeod's actions are likely to injure Carter-McLeod Packaging's business reputation or dilute the distinctive quality of its marks.

290803

15

77.    The above referenced activities of Donald McLeod have been knowing, intentional and willful.

78.    As a direct and proximate result of Donald McLeod's direct and contributory infringement of the Carter-McLeod Packaging marks, Carter-McLeod Packaging has suffered and will continue to suffer substantial loss and injury.

## COUNT III
## Conversion

79.    Carter-McLeod Packaging adopts herein by reference each of the preceding paragraphs and alleges the same as if originally set forth herein.

80.    Donald McLeod wrongfully withdrew, removed and otherwise converted money, assets, equipment, proprietary, confidential and other business records, files and documents, and other property from Carter-McLoud Packaging.

81.    Donald McLeod converted money, assets, equipment, business records, documents, and other property withdrawn and/or removed from Carter-McLoud Packaging to his own use and otherwise exercised dominion and control over the same, which was inconsistent with Carter-McLeod Packaging's ownership and/or rights to the same.

82.    Donald McLeod was aware that he was not authorized to remove money, assets, equipment, business records, documents, and other property from Carter-McLeod Packaging.

83.    As a result of Donald McLeod's conduct, Carter-McLeod Packaging has suffered and will continue to suffer damages.

## COUNT IV
## Breach of Fiduciary Duty/ Duty of Loyalty

84.    Carter-McLeod Packaging adopts herein by reference each of the preceding paragraphs and alleges the same as if originally set forth herein.

290803_2

16

85.    Donald McLeod owed Carter-McLeod Packaging a fiduciary duty and a paramount duty of the utmost good faith and loyalty as president, director and shareholder of Carter-McLeod Packaging.

86.    Donald McLeod breached and otherwise violated his fiduciary duty and duty of good faith and loyalty by, among other things, engaging in the conduct alleged herein.

87.    As a direct and proximate result of Donald McLeod's breach of his fiduciary duty and duty of loyalty, Carter-McLeod Packaging has suffered and will continue to suffer damages.

## COUNT V
## Corporate Waste

88.    Carter-McLeod Packaging adopts herein by reference each of the preceding paragraphs and alleges the same as if originally set forth herein.

89.    Donald McLeod, while acting in his fiduciary capacity as officer, director and shareholder of Carter-McLeod Packaging, diverted corporate funds, assets and property from Carter-McLeod Packaging to his own personal use and benefit and/or the use and benefit of third parties to the detriment of Carter-McLeod Packaging.

90.    Donald McLeod's conduct constitutes corporate waste of funds and assets of Carter-McLeod packaging in violation of his fiduciary and other duties and obligations to the company.

91.    As a direct and proximate result of Donald McLeod's corporate waste, Carter-McLeod Packaging has suffered and will continue to suffer damages.

## Count VI
## Intentional Interference With Contractual Relations

92.    Carter-McLeod Packaging adopts herein by reference each of the preceding paragraphs and alleges the same as if originally set forth herein.

290803

93.    Donald McLeod was and is aware of Carter-McLeod's business and contractual relationships with customers, its bank and others.

94.    Donald McLeod knowingly interfered with Carter-McLeod Packaging's relationship with its customers, its bank and others with whom it contracted.

95.    Donald McLeod engaged in such conduct through improper motive and means.

96.    Donald McLeod's conduct has and will in the future cause Carter-McLeod Packaging to sustain damages.

## COUNT VII
## Intentional Interference With Advantageous Business Relations

97.    Carter-McLeod Packaging adopts herein by reference each of the preceding paragraphs and alleges the same as if originally set forth herein.

98.    Carter-McLeod is engaged in business relationships for economic benefit with existing and potential customers, clients and others.

99.    Donald McLeod was privy to and knew of such business relationships between Carter-McLeod Packaging  and the third parties referenced in the preceding paragraph.

100.    Donald McLeod knowingly interfered with Carter-McLeod Packaging's advantageous business relations with third parties.

101.    Donald McLeod engaged in such conduct through improper motives and means, including but not limited to, using Carter-McLeod Packaging's proprietary and confidential information and  goodwill and by making defamatory statements.

102.    As a direct and proximate result of Donald McLeod's interference, Carter-McLeod Packaging has suffered and will continue to suffer damages.

290803_2

## COUNT VIII
## Fraud/Deceit

103.    Carter-McLeod Packaging adopts herein by reference each of the preceding paragraphs and alleges the same as if originally set forth herein.

104.    Donald McLeod made false and deceitful representations of material facts to Carter-McLeod Packaging as described herein for the purpose of deceiving Carter-McLeod Packaging.

105.    Donald McLeod's representations were made with knowledge of their falsity for the purpose of inducing Carter-McLeod Packaging to act or refrain from acting.

106.    Carter-McLeod Packaging reasonably relied upon Donald McLeod's false representations as true and acted or refrained from acting to its detriment based upon such representations.

107.    As a direct and proximate result of Donald McLeod's fraud and deceit, Carter-McLeod Packaging has suffered and with reasonable probability will in the future suffer substantial damages.

## COUNT IX
## Defamation

108.    Carter-McLeod Packaging adopts herein by reference each of the preceding paragraphs and alleges the same as if originally set forth herein.

109.    Donald McLeod intentionally made and published false and disparaging statements about Carter-McLeod Packaging to the business community for the purpose of causing damage to Carter-McLeod Packaging, its business and its business reputation.

110.    Donald McLeod's defamatory statements have caused and will continue to cause damage to Carter-McLeod Packaging.

290803

## COUNT X

### Violation of the Massachusetts Business Protection Act
### (Mass. G. L. ch. 93A)

111.    Carter-McLeod Packaging adopts herein by reference each of the preceding paragraphs and alleges the same as if originally set forth herein.

112.    At all pertinent times, both Carter-McLeod Packaging and Donald McLeod were engaged in trade or commerce within the meaning of Mass. G. L. ch. 93A, §§ 2 and 11.

113.    Donald McLeod's acts and omissions, as described herein, constitute unfair and/or deceptive acts, practices or methods of competition that violate Mass. G. L. ch. 93A, §§ 2 and 11.

114.    Donald McLeod committed the unfair and/or deceptive acts or practices willfully and knowingly.

115.    Carter-McLeod Packaging has suffered the loss of money or property as a direct and proximate result of Donald McLeod's unfair and/or deceptive acts and practices.

### COUNT XI
### Civil Conspiracy

116.    Carter-McLeod Packaging adopts herein by reference each of the preceding paragraphs and alleges the same as if originally set forth herein.

117.    Donald McLeod acted by common design or agreement with McLeod Packaging and Hazzard to do the wrongful acts alleged here.

118.    Donald McLeod's conduct has and will in the future cause Carter-McLeod Packaging to sustain damages.

## COUNT XII
### Aiding and Abetting

119.    Carter-McLeod Packaging adopts herein by reference each of the preceding paragraphs and alleges the same as if originally set forth herein.

120.    Donald McLeod knew that the conduct of McLeod Packaging and Hazzard was a breach of duty.

121.    Donald McLoed gave substantial assistance or encouragement to McLeod Packaging and Hazzard.

122.    Donald McLeod's conduct has and will in the future cause Carter-McLeod Packaging to sustain damages.

## CLAIMS AGAINST MCLEOD PACKAGING

## COUNT XIII
### False Designation of Origin
### (Lanham Act § 43(a) (15 U.S.C. § 1125(a))

123.    Carter-McLeod Packaging adopts herein by reference each of the preceding paragraphs and alleges the same as if originally set forth herein.

124.    McLeod Packaging has used in commerce the marks "McLeod, "McLeod Packaging," "McLeod Packaging Systems," and the Logo in connection with the sale, offering for sale, repair, distribution, and advertising of paper products, films and supplies and the sale, servicing and supplying of parts for packaging equipment and such use has caused and is likely to continue to cause confusion or mistake or to deceive as to the affiliation, connection or association of McLeod Packaging with Carter-McLeod Packaging or as to the origin, sponsorship, or approval of McLeod Packaging's goods or services by Carter-McLeod Packaging.

290803

21

125.    The above-referenced activities of McLeod Packaging have been knowing, intentional and willful.

126.    As a direct and proximate result of McLeod Packaging's infringement of the "McLeod Packaging Systems," "Carter-McLeod" "Carter-McLeod Paper & Packaging," and the Logo marks, Carter-McLeod Packaging has suffered and will continue to suffer substantial loss and injury.

**COUNT XIV**
**Unfair Competition**
**(Mass. G.L. ch. 110B, § 12)**

127.    Carter-McLeod Packaging adopts herein by reference each of the preceding paragraphs and alleges the same as if originally set forth herein.

128.    McLeod Packaging has used and continues to use the marks "McLeod," "McLeod Packaging," "McLeod Packaging Systems" and the Logo without the consent of Carter-McLeod Packaging, the common law owner of the marks "McLeod Packaging Systems," "Carter-McLeod," "Carter-McLeod Paper & Packaging" and the Logo.

129.    McLeod Packaging's use of the mark "McLeod," "McLeod Packaging," "McLeod Packaging Systems," and the Logo is likely to injure Carter-McLeod Packaging's business reputation or dilute the distinctive quality of its marks.

130.    The above-referenced activities of McLeod Packaging have been willful.

131.    As a direct and proximate result of McLeod Packaging's infringement of the Carter-McLeod Packaging marks, Carter-McLeod Packaging has suffered and will continue to suffer substantial loss and injury.

## COUNT XV
## Conversion

132.     Carter-McLeod Packaging adopts herein by reference each of the preceding paragraphs and alleges the same as if originally set forth herein.

133.     McLeod Packaging, through or at the direction of Donald McLeod, its president, treasurer, secretary, director and sole shareholder, wrongfully removed and otherwise converted proprietary, confidential and other business records, files and documents from Carter-McLoud Packaging.

134.     McLeod Packaging, through or at the direction of its president, Donald McLeod, converted money, assets, equipment, business records, documents, and other property withdrawn and/or removed from Carter-McLeod Packaging to its own use and benefit and otherwise exercised dominion and control over the same, which was inconsistent with the Carter-McLeod Packaging's ownership and/or rights to the same.

135.     Neither Donald McLeod nor McLeod Packaging was authorized to remove money, assets, equipment, business records, documents, and other property from Carter-McLeod Packaging.

136.     As a result of Donald McLeod's conduct, Carter-McLeod has suffered and will continue to suffer damage.

## Count XVI
## Intentional Interference With Contractual Relations

137.     Carter-McLeod Packaging adopts herein by reference each of the preceding paragraphs and alleges the same as if originally set forth herein.

138.     McLeod Packaging was and is aware of Carter-McLeod's business and contractual relationships with customers and others.

290803

23

139.    McLeod Packaging knowingly interfered with Carter-McLeod Packaging's relationship with its customers and others with whom it contracted.

140.    McLeod Packaging engaged in such conduct through improper motive and means.

141.    McLeod Packaging's conduct has and will in the future cause Carter-McLeod Packaging to sustain damages.

## COUNT XVII
### Intentional Interference With Advantageous Business Relations

142.    Carter-McLeod Packaging adopts herein by reference each of the preceding paragraphs and alleges the same as if originally set forth herein.

143.    Carter-McLeod Packaging has established and is part of various advantageous business relations for economic benefit with existing and potential customers, clients and others.

144.    McLeod Packaging became privy to Carter-McLeod Packaging's advantageous business relations and other proprietary and confidential business information of Carter-McLeod Packaging through and at the direction of its president and sole shareholder, Donald McLeod.

145.    McLeod Packaging knowingly and intentionally interfered with Carter-McLeod Packaging's advantageous business relations with third parties through improper motives and means, including but not limited to, using Carter-McLeod Packaging's proprietary and confidential information and goodwill.

146.    As a direct and proximate result of McLeod Packaging's interference, Carter-McLeod Packaging has suffered and will continue to suffer damages.

290803_2

## COUNT XVIII
### Violation of the Massachusetts Business Protection Act
### (Mass. G. L. ch. 93A)

147.    Carter-McLeod Packaging adopts herein by reference each of the preceding paragraphs and alleges the same as if originally set forth herein.

148.    At all pertinent times, both Carter-McLeod Packaging and McLeod Packaging were engaged in trade or commerce within the meaning of Mass. G. L. ch. 93A, §§ 2 and 11.

149.    McLeod Packaging's acts and omissions, as described herein, constitute unfair and/or deceptive acts, practices or methods of competition that violate Mass. G. L. ch. 93A, §§ 2 and 11.

150.    McLeod Packaging committed the unfair and/or deceptive acts or practices willfully and knowingly.

151.    Carter-McLeod Packaging has suffered the loss of money or property as a direct and proximate result of McLeod Packaging's unfair and/or deceptive acts and practices.

## COUNT XIX
### Civil Conspiracy

152.    Carter-McLeod Packaging adopts herein by reference each of the preceding paragraphs and alleges the same as if originally set forth herein.

153.    McLeod Packaging acted by common design or agreement with Donald McLeod and Hazzard to do the wrongful acts alleged here.

154.    McLeod Packaging's conduct has and will in the future cause Carter-McLeod Packaging to sustain damages.

290803

25

## COUNT XX
### Aiding and Abetting

155.    Carter-McLeod Packaging adopts herein by reference each of the preceding paragraphs and alleges the same as if originally set forth herein.

156.    McLeod Packaging knew that the conduct of Donald McLeod and Hazzard was a breach of duty.

157.    McLeod Packaging gave substantial assistance or encouragement to Donald McLoed and Hazzard.

158.    McLeod Packaging's conduct has and will in the future cause Carter-McLeod Packaging to sustain damages.

## CLAIMS AGAINST HAZZARD

### COUNT XXI
#### Conversion

159.    Carter-McLeod Packaging adopts herein by reference each of the preceding paragraphs and alleges the same as if originally set forth herein.

160.    Hazzard wrongfully removed and otherwise converted proprietary, confidential and other business records, files, documents and property from Carter-McLeod Packaging.

161.    Hazzard converted Carter-McLeod Packaging's property to his own use and otherwise exercised dominion and control over the same, which was inconsistent with Carter-McLeod Packaging's ownership and/or rights to the same.

162.    Hazzard was not authorized to take or remove such property from Carter-McLeod Packaging.

290803_2

26

163.    As a result of Hazzard's conduct, Carter-McLeod Packaging has and suffered and will continue to suffer damage.

**Count XXII**
**Intentional Interference With Contractual Relations**

164.    Carter-McLeod Packaging adopts herein by reference each of the preceding paragraphs and alleges the same as if originally set forth herein.

165.    Hazzard was and is aware of Carter-McLeod Packaging's business and contractual relationships with customers and others.

166.    Hazzard knowingly interfered with Carter-McLeod Packaging's relationship with its customers and others with whom it contracted.

167.    Hazzard engaged in such conduct through improper motive and means.

168.    Hazzard's conduct has and will in the future cause Carter-McLeod Packaging to sustain damages.

**COUNT XXIII**
**Intentional Interference With Advantageous Business Relations**

169.    Carter-McLeod Packaging adopts herein by reference each of the preceding paragraphs and alleges the same as if originally set forth herein.

170.    Carter-McLeod Packaging has established and is part of various advantageous business relations for economic benefit with existing and potential customers, clients and others.

171.    Hazzard became privy to Carter-McLeod Packaging's advantageous business relations and other proprietary and confidential business information during his employment with the company.

172.    Hazzard knowingly and intentionally interfered with Carter-McLeod Packaging's advantageous business relations with third parties through improper motives and means and

290803

27

means, including but not limited to, using Carter-McLeod Packaging's proprietary and confidential information and goodwill.

173.   As a direct and proximate result of Hazzard's interference, Carter-McLeod Packaging has suffered and will continue to suffer damages.

## COUNT XXIV
### Defamation

174.   Carter-McLeod Packaging adopts herein by reference each of the preceding paragraphs and alleges the same as if originally set forth herein.

175.   Hazzard intentionally made and published false and disparaging statements about Carter-McLeod Packaging to the business community for the purpose of causing damage to Carter-McLeod Packaging, its business and its business reputation and goodwill.

176.   Hazzard's defamatory statements have caused and will continue to cause damage to Carter-McLeod Packaging.

## COUNT XXV

### Violation of the Massachusetts Business Protection Act
### (Mass. G. L. ch. 93A)

177.   Carter-McLeod Packaging adopts herein by reference each of the preceding paragraphs and alleges the same as if originally set forth herein.

178.   At all pertinent times, both Carter-McLeod Packaging and Hazzard were engaged in trade or commerce within the meaning of Mass. G. L. ch. 93A, §§ 2 and 11.

179.   Hazzard's acts and omissions, as described herein, constitute unfair and/or deceptive acts, practices or methods of competition that violate Mass. G. L. ch. 93A, §§ 2 and 11.

290803_2

180.    Hazzard committed the unfair and/or deceptive acts or practices willfully and knowingly.

181.    Carter-McLeod Packaging has suffered the loss of money or property as a direct and proximate result of McLeod Packaging's unfair and/or deceptive acts and practices.

## COUNT XXVI
### Civil Conspiracy

182.    Carter-McLeod Packaging adopts herein by reference each of the preceding paragraphs and alleges the same as if originally set forth herein.

183.    Hazzard acted by common design or agreement with McLeod Packaging and Donald McLeod to do the wrongful acts alleged here.

184.    Hazzard's conduct has and will in the future cause Carter-McLeod Packaging to sustain damages.

## COUNT XXVII
### Aiding and Abetting

185.    Carter-McLeod Packaging adopts herein by reference each of the preceding paragraphs and alleges the same as if originally set forth herein.

186.    Hazzard knew that the conduct of McLeod Packaging and Donald McLeod was a breach of duty.

187.    Hazzard gave substantial assistance or encouragement to McLeod Packaging and Donald McLoed.

188.    Hazzard's conduct has and will in the future cause Carter-McLeod Packaging to sustain damages.

**WHEREFORE**, Carter-McLeod Packaging respectfully requests that the Court award the following relief on its claims:

a.    money damages equal to the value of money, assets and other property converted by Defendants from Carter-McLeod Packaging;

b.    compensation for its lost profits, business and goodwill caused by Defendants' unlawful conduct;

c.    its costs and expenses, including attorneys' fees pursuant to Mass. G.L. ch. 93A;

d.    Up to three, but not less than two, times the amount of any damage award in accordance with Mass. G.L. ch. 93A;

e.    Interest on damages awarded;

f.    Preliminary and permanent injunctions precluding Defendants from engaging in further unlawful conduct, including but not limited to making further defamatory statements about Carter-McLeod Packaging, using Carter-McLeod Packaging's confidential and proprietary documents, files, records or other information for any purpose and from soliciting its customers via illegal or improper means;

g.    Preliminary and permanent injunctions precluding McLeod Packaging from using the words "McLeod," "McLeod Packaging," "McLeod Packaging Systems" and the Logo in association with the distribution, sale, or offer for sale of paper products, films and supplies or in the distribution, sale, servicing and supplying of parts for packaging equipment, or from any other uses that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by Plaintiff;

h.    Preliminary and permanent injunctions enjoining McLeod Packaging from doing business under the name "McLeod," "McLeod Packaging," "McLeod Packaging Systems" or any name likely to be mistaken for "Carter-McLeod," "Carter-McLeod Packaging," or "Carter-McLeod Paper & Packaging";

i.    An award of up to three times the Defendants' profits, damages sustained by the Plaintiff, and the costs of the action as the court shall find to be just, according to the circumstances of the case;

j.    A declaration that this case is exceptional, entitling Plaintiff to an award of reasonable attorneys' fees; and

k.    Such other relief as the Court deems just, proper, and equitable.

290803_2

30

THE PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL CLAIMS AND ISSUES SO TRIABLE.

The Plaintiff
CARTER-MCLEOD PAPER & PACKAGING, INC.
By Its Attorneys:

Francis D. Dibble, Jr. – BBO No. 123220
Jeffrey E. Poindexter – BBO No. 631922
Pamela S. Chestek – BBO No. 647124
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, Massachusetts  01115-5507
Tel:  (413) 781-2820
Fax:  (413) 272-6805

Dated:  April 14, 2005

290803

31

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS—44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Carter-McLeod Paper and Packaging, Inc.

## DEFENDANTS

Donald McLeod; McLeod Packaging Systems, Inc.; and Morten Hazzard

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Hampden
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Hampden
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) (413)781-2820
Francis D. Dibble, Jr., Esq., Jeffrey E. Poindexter, Esq., and Pamela S. Chestek, Esq.
Bulkley, Richardson & Gelinas, LLP
1500 Main St., Ste. 1500, Springfield, MA 01115

ATTORNEYS (IF KNOWN)

05-30087-MAP

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury — Med. Malpractice<br>☐ 365 Personal Injury — Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☒ 840 Trademark<br>**SOCIAL SECURITY** | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/Exchange<br>☐ 875 Customer Challenge 12 USC 3410 |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence<br>**HABEAS CORPUS:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS — Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Direct and contributory trademark infringement under the Lanham Act Sec. 43(a), as set forth in 15 U.S.C. Sec. 1051 et seq. as well as other claims over which the Court has supplemental jurisdiction.

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $ Money damages, equitable relief, multiple damages and attorneys fees and costs

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ YES  ☐ NO

## VIII. RELATED CASE(S) (See instructions): IF ANY

JUDGE

DOCKET NUMBER

DATE  4/14/05

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

MAG. JUDGE

JS 44 Reverse
(Rev. 3/99)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

## Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** **(a) Plaintiffs – Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. **TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)** Carter-McLeod Paper and Packaging, Inc. v. Donald McLeod, et al

2. **CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).**

   ___ I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   _X_ II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,      *Also complete AO 120 or AO 121
              740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.         for patent, trademark or copyright cases

   ___ III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
              315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
              380, 385, 450, 891.

   ___ IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
              690, 810, 861-865, 870, 871, 875, 900.

   ___ V.    150, 152, 153.

3. **TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(E)).**

4. **HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?**                                                    YES ☐    NO ☒

5. **DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC 2403)**                      YES ☐    NO ☒
   **IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?**
                                                                                YES ☐    NO ☐

6. **IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC 2284?**                                          YES ☐    NO ☒

7. **DO ALL PARTIES IN THIS ACTION RESIDE IN THE CENTRAL SECTION OF THE DISTRICT OF MASSACHUSETTS (WORCESTER COUNTY) - (SEE LOCAL RULE 40.1(C)).**                  YES ☐    NO ☒
   **OR IN THE WESTERN SECTION (BERKSHIRE, FRANKLIN, HAMPDEN OR HAMPSHIRE COUNTIES)? -**
   **(SEE LOCAL RULE 40.1(D)).**                                                YES ☒    NO ☐

8. **DO ALL OF THE PARTIES RESIDING IN MASSACHUSETTS RESIDE IN THE CENTRAL AND/OR WESTERN SECTIONS OF THE DISTRICT?**                                               YES ☒    NO ☐
   (a)  **IF YES, IN WHICH SECTION DOES THE PLAINTIFF RESIDE?** Western

9. **IN WHICH SECTION DO THE ONLY PARTIES RESIDING IN MASSACHUSETTS RESIDE?** _____

10. **IF ANY OF THE PARTIES ARE THE UNITED STATES, COMMONWEALTH OF MASSACHUSETTS, OR ANY GOVERNMENTAL AGENCY OF THE U.S.A. OR THE COMMONWEALTH, DO ALL OTHER PARTIES RESIDE IN THE**
    **CENTRAL SECTION; YES ☐ NO ☐              OR WESTERN SECTION; YES ☐    NO ☐**

(PLEASE TYPE OR PRINT)
**ATTORNEY'S NAME** Jeffrey E. Poindexter, Esq.
**ADDRESS** Bulkley, Richardson & Gelinas, 1500 Main St., Ste. 2700, Springfield, MA 01115
**TELEPHONE NO.** (413) 272-6232

(Categfrm.rev - 3/97)