UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CARTER-McLEOD PAPER AND PACKAGING COMPANY, INC.,     Plaintiff, | ) ) ) | Civil Action No. 3:05-cv-30087-MAP |
| | ) | PLAINTIFF'S MOTION FOR |
| v. | ) | CONTEMPT |
| | ) | (HEARING REQUESTED) |
| | ) | |
| DONALD McLEOD; McLEOD | ) | |
| PACKAGING SYSTEMS, INC.; and | ) | |
| MORTEN HAZZARD, | ) | |
|     Defendants. | | |

## **INTRODUCTION**

Plaintiff Carter-McLeod Paper and Packaging Company, Inc ("Carter-McLeod") hereby moves for an order finding McLeod Packaging Systems, Inc. and Donald McLeod (collectively "Defendants") in contempt of this Court's Order dated August 25, 2005 ("Order"). The Order required the Defendants to change the name of their new competing business from "McLeod Packaging Systems, Inc." to "Donald McLeod Packaging, Inc." or "D. McLeod Packaging, Inc." to resolve Carter-McLeod's claims that the new business infringed Carter-McLeod's tradename "McLeod Packaging Systems" causing consumer confusion. Ordering the name change enabled settlement of three pending legal actions, including the instant action. Although the Defendants changed their corporate name with the Secretary of the Commonwealth, they violated the Order by adulterating the ordered-language, **"D. McLeod Packaging, Inc.,"** in consumer materials to:

Business Card:



Website Name:   D.**McLeod Packaging. Inc**

Website Address:        **www.mcleodpack.com**

Email Addresses:         **___@mcleodpack.com**

Accordingly, Carter-McLeod moves for an order holding Defendants in contempt, an award of sanctions and attorneys' fees as set forth herein.

## BACKGROUND

Carter-McLeod filed the instant action on April 14, 2005 asserting, among others, claims for trademark infringement. See Complaint, Dkt. #1. Carter-McLeod also filed a Motion for Preliminary Injunction ("PI Motion") seeking, among other relief, to enjoin the Defendants from continuing to infringe upon Carter-McLeod's active tradename and former corporate name "McLeod Packaging Systems." Docket #s 10, 11. The parties also were involved at the time in two other legal actions relating to various disputes among the parties – an arbitration action and a Massachusetts Superior Court action. See Joint Memorandum Regarding Settlement ("Joint Memo"), ¶2, Dkt. #18. The parties agreed at the hearing scheduled for Carter-McLeod's PI Motion to pursue a global settlement of the claims and disputes in the present action and the other two pending actions. See Joint Memo, ¶3. With the initial assistance of the Court, the parties ultimately settled all of their disputes except the issue of what name Defendant McLeod Packaging Systems, Inc. would be required to use going forward. See Joint Memo, ¶5. The parties requested that the Court decide this issue based on a list of three names provided by each party. Joint Memo, ¶5. The parties further agreed that "any name selected by the Court shall be binding on the parties" and that the Court's decision regarding the name would not be subject to appeal. Joint Memo, ¶6.

Carter-McLeod proposed the following names: (1) D.M. Packaging, Inc., (2) Donald McLeod Equipment and Packaging, Inc., and (3) Donald McLeod Packaging, Inc. See Dkt. #20. Defendants proposed (1) McLeod Packaging Systems, Inc. (i.e., no name change at all), (2) McLeod Packaging, Inc., and D. McLeod Packaging Systems, Inc. See Letter from James F.

2

Martin to the Court, on file with the Court but not docketed. The Court issued a decision and

reasoning on the name issue from the bench, stating in pertinent part as follows:

> I've heard from each of you now and I guess I'm in a position of making the decision and
> so I'm going to make the decision, and the decision that I'm going to make is this. I'm
> going to allow the defendants to continue its business under one of two names. You have
> to pick one of them. Either the plaintiff 's third suggestion, **Donald McLeod Packaging,
> Inc.,** you can do it under that name, or if you prefer and you like something shorter, you
> can do **D. McLeod Packaging, Inc**. I think the step away from Donald McLeod
> Packaging, Inc. to D. McLeod Packaging, Inc. puts me right in between the two of you.
> You [defendants] have no problem with D. McLeod Packaging Systems, Inc. They
> [plaintiff] have no problem with Donald McLeod Packaging, Inc. D. McLeod Packaging,
> Inc. without the Systems I think is a pretty good suggestion. . . . So I think one of those
> names represents a compromise . . . I would suggest that whatever name is adopted by the
> defendant be implemented within the next 90 days. That that be **done to give the
> defendant an opportunity to notify his customers, get new stationary et cetera, et
> cetera.** So that's where I come out. . . . The defendant can go and continue his business
> as either Donald McLeod Packaging, Inc., which was the plaintiff's third suggestion, or
> the alternative if the defendant prefers of using D. McLeod Packaging, Inc. which is a
> little shorter and snappier. [Emphasis added].

A transcript of the Court's oral decision and Order is attached hereto at Exhibit A.

The week before Christmas, Carter-McLeod received a Christmas card from Defendants

enclosing the following business card:



See Affidavit of Robert H. McLeod ("Aff."), attached hereto as Exhibit B, at ¶2. As noted

above, the card camouflages the court-ordered "D." inside the "M" of McLeod in a very small

font size. The card also enlarges and bolds the surname McLeod. The card also contains the

email address "parts@**mcleodpack**.com" which has not been changed to add the "D" ordered by

the Court.

3

On further investigation it was revealed that Defendants' website address, "www.mcleodpack.com" was also not changed to reflect a name ordered by the Court and that the website prominently displayed an adulterated version of the Court-ordered name:

# D.**McLeod Packaging. Inc**

Aff., ¶4.[1]

The undersigned counsel for Carter-McLeod sent a letter to Defendants' counsel on December 20, 2005 and an email on December 21, 2005, requesting that the Defendants cease using the adulterated names depicted on its website, business card and any other consumer-oriented marketing materials.  Aff., ¶¶5, 6, and Tabs 1 and 2 attached thereto.   Counsel for Defendants responded by letter dated December 23, 2005, in essence stating the names depicted on the referenced materials did not violate the Court's Order and stating that D.McLeod complied with the Court's Order by changing its name with the Secretary of State's Office and by ceasing the use of the name "McLeod Packaging Systems, Inc."  Aff., ¶6 and Tab 3.  The letter further stated that  "the use of various different fonts and boldness of type do not in any way diminish the fact that [defendant] is no longer using the phrase "Packaging Systems" in its name and that the Court's Order does not make any "reference" the D.McLeod's email address and does not require a "D" before McLeod in its domain name.  Aff., at Tab 3.

---

[1]     It appears that the Defendants recently have modified the website to correct the size of the "D.," but still maintain the right to make additional modifications as they "continue[] to experiment with marketing the new name."  Aff., ¶7, Tabs 3 and 4.

## ARGUMENT

Civil contempt is warranted upon clear and convincing proof that the offending party's actions violated a clear and unambiguous order of the Court.  See AMF Inc. v. Jewett, 711 F.2d 1096, 1102 (1st Cir. 1983) (reversing district court denial of motion for contempt); Dystar Corp. v. Canto, 1 F. Supp. 2d 48, 54 (D. Mass. 1997) (granting motion for contempt).  In examining Defendant's conduct for contempt, the language of the order should be viewed in light of the circumstances surrounding the order and the purpose of the order.  See AMF, 711 F.2d at 1102.

The Court's Order is clear by its express language, and is made even clearer by the context in which it was issued.  Specifically, the Court explicitly ordered that the Defendants stop using "McLeod Packaging Systems, Inc." and instead use "Donald McLeod Packaging, Inc." or "D. McLeod Packaging, Inc," and the Defendants chose the latter.  The Court gave the Defendants ninety days to implement the name change "to give the defendant an opportunity to notify his customers, get new stationary et cetera, et cetera."  The Court in no way suggested that the Defendants could simply change its corporate name through Secretary of the Commonwealth and adopt an adulterated version of the name in marketing materials and other documents distributed to customers, suppliers and others.  Indeed, it was most important in resolving Carter-McLeod's infringement claims that the Defendants properly use the new name in materials distributed to the parties overlapping customers.

Even if the language of the Court's Order could reasonably be interpreted to allow the Defendants' drastic manipulation of the new name, which it cannot, the circumstances under which the Court issued the Order leave no doubt as to its parameters.  Specifically, the Court's Order ensued from Carter-McLeod's tradename infringement action seeking to permanently enjoin the Defendants from using the "McLeod" surname in the title of its newly formed and

5

competing company.  Based on concessions made by Carter-McLeod and further concessions allowed by the Court, the Defendants were allowed to continue to use the "McLeod" surname as long as it dropped the word "Systems" from the title and added a "D." before "McLeod."  Under these circumstances, it is difficult to conceive how the Defendants may have thought that they could enlarge and bold "McLeod" and camouflage the required "D." inside another letter on its business cards or dramatically minimize the "D." on their website.  Indeed, the name depicted on the business card more resembles one of the names proposed by the Defendants and rejected by the Court – "McLeod Packaging, Inc."  It is also difficult to conceive that the Defendants could have interpreted the Order to allow them to exclude the required "D." from certain materials, such as their website and email addresses. [2]

The Defendants' mockery of the Court's Order and the parties' settlement is underscored by the fact that the Defendants sent the offending business card to Carter-McLeod in a Christmas card, presumably to taunt Carter-McLeod and it principals.  Indeed, given the recent relationship between the parties, there was no legitimate reason for the Defendants to forward a business card to Carter-McLeod except to provoke the plaintiff.  For the foregoing reasons, the Court should find the Defendants in contempt.

## REMEDIES

A court's power to punish disobedience by civil contempt is remedial in nature and designed both to coerce obedience and to compensate the complainant for losses sustained.  In re

---

[2]    The suggestion in counsel's December 23rd letter (Exh. B, Tab 3) that the Defendants may use various typefaces and fonts and various means to incorporate the "D." also is undermined by the fact that when courts evaluate distinguishing names they "routinely require use of full names, first and second in equal size," see, e.g., Basile, S.p.A. v. Basile, 899 F.2d 35, 38 (D.C. Cir. 1990) (gathering cases).  Additionally, the so-called "Safe Distance Rule" requires infringing parties under Court order to an even higher burden to steer clear of the senior mark.  See AMF, 711 F. 2d at 1107 (party under order not to use mark has clear obligation to do more than show how close they could come to the line, district court erred by not finding contempt); see also McCarthy on Trademarks, § 30:21 and cases cited therein.

Power Recovery Systems, Inc., 950 F.2d 798, 802 (1st Cir. 1991).  In choosing sanctions

designed to coerce future compliance, a court has wide discretion in considering "the character

and magnitude of harm threatened by continued contumacy, and the probable effectiveness of

any suggested sanction in bringing about compliance."  In re Power Recovery Systems, Inc., 950

F.2d 798, 802 (1st Cir. 1991) (quoting United States v. United Mine Workers, 330 U.S. 258,

303-04 (1947)); see also Carlucci v. Piper Aircraft Corp., 102 F.R.D. 472, 486 (S.D.Fla. 1984)

("[d]eliberate, willful and contumacious disregard of the judicial process and the rights of

opposing parties justifies the most severe sanction").  In addition to other sanctions, an award of

attorneys' fees incurred by a party in prosecuting a contempt proceeding is an appropriate

remedy.  See Star Financial Services, Inc. v. AASTAR Mortgage Corp., 89 F.3d 5, 13 (1st Cir.

1996) (affirming a district court's order requiring that a party held in contempt pay attorneys'

fees as well as costs associated with bringing the motion for contempt).

Under this backdrop, Carter-McLeod requests that the Court order the following remedies

in connection with the Defendants contempt:

1.     The Court rescind its original Order requiring the Defendants to change their

business name to D. McLeod Packaging, Inc. and require the Defendants instead to change their

business name, marketing materials and other documents to  D.M. Packaging, Inc., which Carter-

McLeod previously proposed, or an alternative name that does not include the "McLeod"

surname.  Such action will minimize the likelihood that any manipulation of the name or similar

conduct will raise any need for contempt or other legal proceedings in the future.

**OR**

2.     The Court clarify that the Defendants cannot manipulate their corporate name as

referenced herein and must set forth each of the letters, words and characters in its name in the

same font, size, boldness etc. and may not shroud or camouflage letters or words in the name

inside of other letters or words. The Defendants should be required to provide proof within ten

days that its website, business cards, email addresses and other marketing materials and

documents are in compliance with the Court's Order. The Court should make clear that any

future violations by the Defendants will result in the Defendants' forfeiture of the "McLeod"

surname in the title of the company as well as any other remedies the Court deems just.

**AND, IN ADDITION TO 1 OR 2**

    3.  The Court order the Defendants to pay Carter-McLeod attorneys' fees and costs

associated with filing, arguing and otherwise prosecuting the present motion.

**AND/OR**

    4.  Any other relief the Court deems proper.

Dated:  January 11, 2006

The Plaintiff,
CARTER-MCLEOD PAPER &
PACKAGING COMPANY, INC.,
By Its Attorneys:

Francis D. Dibble, Jr. – BBO No. 123220
Jeffrey E. Poindexter – BBO No. 631922
Seth M. Wilson – BBO No. 640270
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, MA  01115
Tel:  (413) 781-2820
Fax:  (413) 272-6804
fdibble@bulkley.com
jpoindexter@bulkley.com

---

CERTIFICATE OF COMPLIANCE AND
REQUEST FOR ORAL ARGUMENT

    I hereby certify that I have conferred
with opposing counsel and have attempted in
good faith to resolve or narrow the issues in
this motion in compliance with Local Rule
7.1 of this court. The plaintiff requests oral
argument pursuant to Local Rule 7.1(E).

Jeffrey E. Poindexter

# EXHIBIT
# A

1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN SECTION

CARTER-McLEOD PAPER          .     Docket No. CA 05-30087-MAP
                             .
        v.                   .     Springfield, MA
                             .
DONALD McLEOD                .     August 26, 2005
. . . . . . . . . . . . . . . . . . . . . . .


EXCERPT OF HEARING HELD BEFORE THE

HONORABLE MICHAEL A. PONSOR,

UNITED STATES DISTRICT COURT JUDGE.



APPEARANCES:

For the plaintiff:  Jeff Poindexter, 1500 Main Street,
                    Suite 2700, Springfield, MA 01115.


For the defendant:  James Martin, 1500 Main Street, Suite
                    1600, Springfield, MA 01115.



Alice Moran, CSR, RPR, RMR
Official Federal Court Reporter
1550 Main Street, Room 536
Springfield, MA 01103
Tel: 413-731-0086  Fax: 413-737-7333
amoran@prodigy.net

1          (Excerpt of hearing.)

2

3          THE COURT:  All right.  Well, I don't see any

4     possibility of a compromise right now.  I don't think I'm

5     going to get either one of you to say --

6          MR. MARTIN:  I don't think we would have come

7     to this if we could.  I'll commend him.  We tried hard.

8     We went back and forth, and, as I say, the whole, you

9     know, the whole thing could have blown up.  All the

10    numbers and dollars, everything, could have blown up.

11         I give Jeff acknowledgement for saying why don't we

12    try and, you know, keep the package that I propose intact

13    and just, you know, choose to disagree over the name and

14    see how we can resolve it.

15         THE COURT:  All right.  Well, here's what I'm

16    going to do.  I've heard from each of you now and I guess

17    I'm in a position of making the decision and so I'm going

18    to make the decision, and the decision that I'm going to

19    make is this.

20         I'm going to allow the defendants to continue its

21    business under one of two names.  You have to pick one of

22    them.  Either the plaintiff's third suggestion, Donald

23    McLeod Packaging, Inc., you can do it under that name, or

24    if you prefer and you like something shorter, you can do

25    D. McLeod Packaging, Inc.

1      I think the step away from Donald McLeod Packaging,

2   Inc. to D. McLeod Packaging, Inc. puts me right in

3   between the two of you.  You have no problem with D.

4   McLeod Packaging Systems, Inc.  They have no problem with

5   Donald McLeod Packaging, Inc.  D. McLeod Packaging, Inc.

6   without the Systems I think is a pretty good suggestion.

7      I'm only giving you the alternative of taking Donald

8   McLeod Packaging, Inc. if you prefer it over my

9   suggestion which was one that neither one of you made,

10   which is D. McLeod Packaging, Inc.

11      So I think either one of those names represents a

12   compromise.  I don't think there's really anything left

13   to fight about.  I would suggest that whatever name is

14   adopted by the defendant be implemented within the next

15   90 days.  That that be done to give the defendant an

16   opportunity to notify his customers, get new stationery,

17   et cetera, et cetera.

18      So that's where I come out.  I don't think it's

19   going to be any easier for me to talk about it any more.

20   It's kind of like you've got a bandaid over your hand and

21   you can do it one hair at a time or you can just jerk the

22   bandaid off and put some Listerine on it and get on with

23   your business.  So I think that's my decision on it.

24      The defendant can go and continue his business as

25   either Donald McLeod Packaging, Inc., which was the

```
 1    plaintiff's third suggestion, or the alternative if the

 2    defendant prefers of using D. McLeod Packaging, Inc.

 3    which is a little shorter and snappier.

 4        At that point I say go now and sin no more and, you

 5    know, get on with your business of providing employment

 6    and increasing the prosperity of both yourselves

 7    hopefully and the citizens of Western Massachusetts who

 8    will be depending upon you for employment.  So that's

 9    where we are.

10            MR. MARTIN:  Could I just speak with my client

11    for a moment?

12            THE COURT:  Sure.  Absolutely.  I'm noticing

13    faint, faint nods, faint but perceptible nods, from both

14    the principals so it's encouraging to me.

15            MR. MARTIN:  I just wanted to make sure 90 days

16    was enough time.

17            THE COURT:  We're all set?

18            MR. MARTIN:  We are, Judge.

19            MR. POINDEXTER:  Thank you.

20            THE COURT:  The court is in recess.  Good luck

21    to both sides.  Thank you.

22

23

24                (Court recessed at 12:08.)

25
```

5

1  UNITED STATES OF AMERICA
   DISTRICT OF MASSACHUSETTS
2  CITY OF SPRINGFIELD

3

4

5          I, Alice Moran, do hereby certify that the

6  foregoing is a true and accurate transcription of my

7  stenographic notes to the best of my knowledge and

8  ability.

9          Certified on December 29, 2005.  My commission

10 expires on April 13, 2012.

11

12

13                         _____
                           Alice Moran, CSR, RPR, RMR
14                         Official Federal Court Reporter

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT
B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 3:05-cv-30087-MAP

CARTER-McLEOD PAPER AND )
PACKAGING COMPANY, INC. )
                            )
    Plaintiff             )
                            ) AFFIDAVIT OF ROBERT H. McLEOD
v.                         )
                            )
DONALD McLEOD; McLEOD )
PACKAGING SYSTEMS and )
MORTEN HAZZARD )
                            )
    Defendants.      )

I, Robert H. McLeod, being duly sworn, depose and say:

1.      I currently am the President of Carter-McLeod Paper and Packaging Company,

Inc. ("Carter-McLeod Packaging"). I submit this affidavit in support of plaintiff's Motion for

Contempt.

2.      During the week of December 19, 2005, Carter-McLeod Packaging received a

Christmas card from D. McLeod Packaging, Inc. f/k/a defendant McLeod Packaging Systems,

Inc. The Christmas card contained a business card from one of the company's sales

representatives, a true and accurate copy of which is as follows:



3.    On December 20, 2005, Carter-McLeod's counsel sent a letter to counsel for D. McLeod notifying him of the name depicted on the business card, informing him that the name as used violated the Court's August 26, 2005 and requesting that D. McLeod cease depicting the company name as set forth on the card. A true and accurate copy of the December 20, 2005 correspondence from Jeffrey E. Poindexter to James F. Martin is attached hereto at Tab 1.

4.    On or around December 20, 2005, I visited D. McLeod's website to determine if the company had changed its name as ordered by the Court on the website. The website depicted the following as a depiction of the company's new name:

# D.McLeod Packaging. Inc

5.    Carter-McLeod communicated through counsel by email to D. McLeod's lawyer that the website depiction of D. McLeod's new name was in violation of the Court's Order and requested that the website be changed by the deadline set forth therein. A true and accurate copy of the December 21, 2005 email by Mr. Poindexter to Mr. Martin is attached hereto at Tab 2.

6.    Carter-McLeod's attorney received a letter from D. McLeod's attorney on or around December 23, 2005 indicating in essence that D. McLeod's depiction of its new name did not violate the Court's Order and that it did not intend to cease depicting the name as set forth in D. McLeod's business cards and on its website. A true and accurate copy of Mr. Martin's correspondence to Mr. Poindexter is attached hereto at Tab 3.

7.    On January, 5, 2006 part of Defendants' website showed a corrected sized "D.," however, other sections of the site showed continued use of a smaller font for the "D.," and in fact used a lower case "d." A true and accurate copy of the webpage observed that day is attached hereto at Tab 4.

Signed under the pains and penalties of perjury this 10th day of January, 2006.

Robert H. McLeod

# TAB
# 1



**BULKLEY, RICHARDSON AND GELINAS, LLP**

LAW OFFICES
1500 MAIN STREET, SUITE 2700
POST OFFICE BOX 15507
SPRINGFIELD, MA 01115-5507

TEL:  (413) 781-2820
FAX:  (413) 272-6805
E-MAIL: INFO@BULKLEY.COM

ROBERT B. ATKINSON
ROBERT A. GELINAS
RONALD P. WEISS
FRANCIS D. DIBBLE, JR.
HAMILTON DOHERTY, JR.
MICHAEL H. BURKE
PETER H. BARRY
DAVID A. PARKE
FELICITY HARDEE
CHRISTOPHER B. MYHRUM
GEORGE W. MARION
ELLEN M. RANDLE
KEVIN C. MAYNARD
MARK D. CRESS
MARY J. KENNEDY
J. MICHAEL SCULLY

JAMES C. DUDA
KELLY A. McCARTHY
DANIEL J. FINNEGAN
MELINDA M. PHELPS
JEFFREY E. POINDEXTER
KATHERINE A. ROBERTSON
KATHLEEN LEITAO BERNARDO
DONN A. RANDALL*
SCOTT W. FOSTER
ELIZABETH H. SILLIN
VANESSA L. SMITH
DEBRA A. QUINN
JOSHUA P. GREY
JENELLE C. DODDS
CHRISTOPHER J. SCOTT
MARY ELLEN MANGANELLI*

JENNIFER K. CANNON
GASTÓN DE LOS REYES
DANIEL A. LEONARDO*
SETH M. WILSON

COUNSEL

DANIEL J. BLAKE*
CAROL E. KAMM*
J. PATRICK KENNEDY*
PETER ROTH
STEPHEN W. SCHUPACK
PHILIP J. TARPEY, JR.

*RESIDENT IN BOSTON OFFICE

December 20, 2005

**VIA FACSIMILE AND**
**REGULAR MAIL**

James F. Martin, Esq.
Robinson Donovan, P. C.
1500 Main Street, Suite 1600
Springfield, MA 01115

Re:    Carter-McLeod Paper and Packaging Company, Inc. v. Donald McLeod, et al.
U.S. District Court Civil Action No. 05-30087-MAP

Dear Jim:

I am enclosing a copy of the card being used by D. McLeod Packaging, Inc. f/k/a McLeod Packaging Systems, Inc. ("D. McLeod"), which was sent to Robert McLeod in a Christmas card. D. McLeod's card is in clear violation of Judge Ponsor's order and the Settlement Agreement requiring that the company to use the name "D. McLeod Packaging, Inc.". Carter-McLeod Paper and Packaging Company, Inc. ("Carter-McLeod") agreed to settle the litigation and allow Donald McLeod and his new company to continue using the "McLeod" name in connection with the specific name chosen by Judge Ponsor. The name your client currently is using, as depicted in the attached business card, is not the name selected by Judge Ponsor and, indeed, makes a mockery of the Court's decision and the Settlement Agreement. In addition to using an enlarged and bolded "McLeod," your client has camouflaged the "D." completely by minimizing it and incorporating it into one of the other title letters. The card also reflects that the company has not changed its email addresses to reflect the name change.

We believe that D. McLeod's conduct is in bad faith and rises to the level of contempt. Please be advised that if D. McLeod does not provide proof by this Friday (December 24, 2005) that it has ceased using the name as depicted on the card and that it is complying with Judge Ponsor's decision and the Settlement Agreement, I intend to file on behalf of Carter-McLeod a complaint for contempt in Federal Court. If such action is necessary, we will seek sanctions, including an order by the Court rescinding its initial name choice and requiring D. McLeod's name be changed to one of Carter-McLeod's other name recommendations that do not include the McLeod surname. We would also ask for, among other relief, legal and other costs for bringing such an action.

BULKLEY, RICHARDSON AND GELINAS, LLP

James F. Martin, Esq.
December 20, 2005
Page 2

I look forward to your response.

Very truly yours,

Jeffrey E. Poindexter

JEP/kel

Enclosure

cc:     Robert McLeod (Via Facsimile)

#316112



**Patrick Fitzgerald**
*Parts and Service Coordinator*
*Sales Representative*

P.O. Box 1047                              413-525-0706 ext.106
51 Denslow Road                              Fax: 413-525-0713
East Longmeadow, MA 01028     email: parts@mcleodpack.com

TAB
2

**From:** Poindexter, Jeffrey [mailto:jpoindexter@bulkley.com]

**Sent:** Wednesday, December 21, 2005 8:41 AM

**To:** MARTIN, J

**Cc:** Bob McLeod

**Subject:** D. McLeod Packaging, Inc.

Jim:  I am forwarding Donald's Website.  I am adding to my request in my recent letter to you that you provide proof that the Website and any other marketing materials have been changed and are consistent with Judge Ponsor's decision and the Settlement Agreement.  The Friday deadline applies to this as well.  My requests are non-negotiable.  Either these materials are changed or we file for contempt.  As you know, Judge Ponsor will not be amused by the games Donald is playing with the Court's decision.

# D.McLeod Packaging. Inc

Phone: (413) 525-0706                                    Fax: (413) 525-0713





**Bags**

D. McLeod Packaging, Inc. is a national supplier of packaging equipment and packaging supplies with a combined total of over 80 years experience in the packaging business.

We are committed to providing a high quality product at a competitive price. We are continually working to improve your quality while reducing your packaging cost.  Our strength is



**Stretch Wrap**

























**Bundling Film**



**Cornerboard**



**Steel & Plastic**

**Strapping**



**Strapping Tools**

in our ability to work with you to create a program to fit your needs by not simply providing packaging supplies, but providing a plan that helps you manage and continually improve your packaging requirements. As packaging equipment specialists we also provide our expertise in designing, installing and servicing Stretch Wrapping, Shrink Wrapping and other packaging systems. We investigate all availabilities to determine the best long-term solution to your unique packaging application.



**Stretch Wrapping Equipment**



**Shrink Film**



**Shrink Packaging Equipment**



TAB
3



**James F. Martin, Esq.**                                        jmartin@robinson-donovan.com

December 23, 2005

Jeffrey E. Poindexter, Esq.
Bulkley, Richardson and Gelinas, LLP
1500 Main St., 27th Floor
Springfield, MA 01115

    RE:    Carter-McLeod Paper and Packaging Company, Inc. v. Donald McLeod, et al
             U.S. District Court – C. A. No:  05-30087-MAP

Dear Mr. Poindexter:

        I acknowledge receipt of your letter dated December 20, 2005.  Upon receipt of your letter I forwarded it to my client and discussed the letter with Donald McLeod.  This letter is in response to your correspondence.

        At the outset, my clients thoroughly and completely deny your baseless allegation that my client has in any way violated the terms of the Settlement Agreement between the parties and in no way does my clients' conduct even hint at being in contempt of any Court Order.

        The fully-executed Settlement Agreement which you forwarded to my office on October 4, 2005 provides that "McLeod Packaging Systems, Inc. shall, by November 24, 2005, change its name to either Donald McLeod Packaging, Inc. or D.P. McLeod Packaging, Inc.  Enclosed herewith is verification from the Commonwealth of Massachusetts Secretary of State Department that McLeod Packaging Systems, Inc., on November 23, 2005, changed its corporate name to D. McLeod Packaging, Inc.  The Articles of Amendment which was filed with the Secretary of State's Office is also enclosed.  Therefore, my client completely complied with the terms of the Settlement Agreement and Mutual Release.  Furthermore, Paragraph 3 provided that my client would cease using the name McLeod Packaging Sytems, Inc. and, it has done so.  The use of various different fonts and boldness of type do not in any way diminish the fact that my client is no longer using the phrase "Packaging Systems" in its name.  As you observed from the documents that you forwarded to me, my client has utilized various ways to incorporate his first name initial (D) into various marketing tools.  My client believes that this is clearly

414258

December 23, 2005
Page 2

distinguishable from his prior corporate name and is in keeping with the spirit and intent of the agreement reached in Court which resulted in the Settlement Agreement.

Nowhere in the Settlement Agreement is there any reference to my client's email address. However, my clients' email address is perfectly consistent with its corporate name. The word "Systems" is not in the email address and he is not obligated to spell out the word "Packaging" or use the initial "D" before the word McLeod in his domain name.

Consequently, my client believes that if your client elects to commence any litigation in the U.S. District Court they will be the party who has engaged in bad faith litigation and my client is confident that Judge Ponsor will be in full agreement with them that such an action would be based on pettiness and harassment rather than grounded in any legal bases.

As my client continues to experiment with marketing the new name of his company he will continue to incorporate the initial "D" before the McLeod name so as to clearly distinguish his business from any other business. The likelihood of there being any confusion or mistake with your clients' corporate entity is essentially zero.

My client only hopes that it is not eventually established that your client's motivation for sending such a baseless threatening letter is to distract him and intimidate him from pursuing all his rights as a member of McLeod, McLeod & Chadwick, LLC in an effort to determine the level of improper conduct and wrongdoing committed by Mr. Robert McLeod and Mr. Alan Chadwick regarding the real estate owned by McLeod, McLeod & Chadwick, LLC.

If you would like to call me to discuss this matter I would be happy to review it with you either in person or on the telephone.

Very truly yours,

James F. Martin

JFM/mm/encls.
Cc: Donald McLeod

TAB
4

# D.McLeod Packaging. Inc

Phone: (413) 525-0706                                                                    Fax

---



Home

Bags

Bundling Film

Cornerboard

Parts & Service

Shrink Film

Shrink Equipment

Strapping

Strapping Equipment

Stretch Film

Stretch Wrappers

Tapes

Contact Us

## Stretch Film

d. McLeod Packaging carries a full line of stretch films designed for Manual and Automated processes. These films can be supplied in various lengths, widths, and colors in a wide variety of gauges. Opaque films are also available.

d. McLeod Packaging utilizes only the best films in the industry to provide your company with the quality and

# D.McLeod Packaging. Inc

## Phone: (413) 525-0706

Fax: (413) 525-0713



- Home
- Bags
- Bundling
- Cornerbo
- Parts & Se
- Shrink Fi
- Shrink Equip
- Strappin
- Strapping Equi ent
- Stretch F
- Stretch Wra rs
- Tapes
- Contact



## Bags



## Bundling Film



## Cornerboard



## Steel & Plastic Strapping



## Strapping Tools & Equipment

D.McLeod Packaging, Inc. is a national supplier of packaging equipment and packaging supplies with a combined total of over 80 years experience in the packaging business.

We are committed to providing a high quality product at a competitive price. We are continually working to improve your quality while reducing your packaging cost.  Our strength is in our ability to work with you to create a program to fit your needs by not simply providing packaging supplies, but providing a plan that helps you manage and continually improve your packaging requirements. As packaging equipment specialists we also provide our expertise in designing, installing and servicing Stretch Wrapping, Shrink Wrapping and other packaging systems. We investigate all availabilities to determine the best long-term solution to your unique packaging application.



## Stretch Wrap



## Stretch Wrapping Equipment



## Shrink Film



## Shrink Packaging Equipment



## Tapes